Harry Earl POLLARD, by next friend, Sol G. Cherry, Appellee,

v.

William Patrick FENNELL and Tillie Michel Fennell, Appellants.

No. 12077.

United States Court of Appeals Fourth Circuit.

Argued May 7, 1968.

Decided July 18, 1968.

---

F. T. Dupree, Jr., Raleigh, N. C., (David R. Cockman, and Dupree, Weaver, Horton, Cockman & Alvis, Raleigh, N. C., on brief) for appellants.

Joe McLeod, Fayetteville, N. C., (Quillin, Russ, Worth & McLeod, Fayetteville, N. C., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and WINTER, Circuit Judges.

WINTER, *Circuit Judge:*

In a jury trial in which liability was conceded, plaintiff, an eighteen-year-old minor, was awarded judgment for $42,-500 for a permanent one-inch shortening of his right leg and for pain and suffering as a result of an accident which occurred when he was approximately sixteen years old. At that time, plaintiff, a pedestrian, was struck by a motor vehicle owned by one defendant and operated by the other. In the action no claim was made for medical expenses or for loss of services during minority. Defendant in appealing assigns as error (a) the manner in which the district judge conducted the trial, his interrogation of witnesses and his repetition of testimony favorable to plaintiff, (b) the district judge's limitation on defendants in the efforts of their counsel to cross-examine plaintiff on the basis of his pretrial deposition, and (c) the district judge's interruption of defendants' counsel's closing argument and his admonition. The amount of the verdict, standing alone, does not shock us, but we are constrained to reverse the judgment and award a new trial because of the district judge's

improper and unwarranted participation in the trial.

■ To treat defendants' contentions in inverse order, we see no merit in the claim of error in the interruption of closing argument. In the case liability was conceded. Yet in closing argument defendants' counsel told the jury "We hope that our fairness and our approach to the whole thing has been evidenced by our giving up the right to show that this was, indeed, a pure accident and one that couldn't be helped. We hope that—." Quite properly, we think, the district judge interrupted the argument and told the jury that there was no evidence at all that the accident could not be helped. In advising counsel that he would not permit the argument that the accident was unavoidable after the driver (William Patrick Fennell) pleaded guilty to responsibility for the accident and both defendants admitted liability at the trial, the district judge correctly exercised his function as governor of the trial.

The district judge did unduly limit defendants' counsel in his cross-examination of plaintiff, but we cannot say that the limitation, as such, constituted reversible error. On cross-examination, counsel asked plaintiff in regard to pain experienced during his hospitalization whether the pain continued for *about* two weeks. Plaintiff replied that the pain persisted for *over* two weeks. After an exchange with the district judge, in which the latter volunteered that "there is no question in my mind he hurt all the time for a long period of time," counsel attempted to interrogate plaintiff about his deposition testimony that the pain he experienced in the hospital continued "not long" and specifically "about two weeks." The district judge interrupted the interrogation, ruling "You want to introduce his deposition, introduce it, let the jury read it," gratuitously and incorrectly observing "there is no evidence that this boy has changed his story in the slightest." After counsel voiced an objection, the district judge repeated his erroneous comment, saying "I am not going to let you infer or make a statement that the boy has changed his story when there isn't a bit of evidence to indicate that he has."

■ Ordinarily, counsel should be permitted to interrogate a party or a witness on the basis of his deposition about apparent inconsistencies between his testimony in court and his testimony on deposition with regard to all matters relevant to the issues at trial. There was an apparent inconsistency in plaintiff's testimony on the two occasions in regard to the duration of pain in the hospital, an item of injury for which recovery was sought, and counsel should have been permitted to inquire. Plaintiff's deposition, under Rule 26(d) (2), Fed.R.Civ.Proc., because he was a party, could be used by defendants for any purpose. While we neither commend nor approve of the district judge's failure to observe the provisions of Rule 26(d) (1), Fed.R.Civ.Proc., that a deposition "may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness," defendants' counsel could have achieved the same practical result by adopting the suggestion of the district judge and offering plaintiff's deposition so that he could call to the jury's attention plaintiff's apparently inconsistent statement. This counsel failed to do, and we conclude that the district judge's error in this regard was not sufficiently prejudicial to warrant reversal. However, more basic and fundamental considerations do require that result.

■ As we have adverted to in our discussion of defendants' counsel's argument to the jury, in this circuit the rule is well-established that the district judge is the governor of the trial. United States v. Chase, 372 F.2d 453 (4 Cir. 1967); Fields v. United States, 370 F.2d 836 (4 Cir. 1967); United States v. Godel, 361 F.2d 21 (4 Cir. 1966); Wallace v. United States, 281 F.2d 656 (4 Cir. 1960), cert. den., 370 U.S. 923, 82 S.Ct. 1564, 8 L.Ed.2d 503 (1962);

Simon v. United States, 123 F.2d 80 (4 Cir.), cert. den., 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555 (1941). This is so because he is the only disinterested lawyer connected with the proceeding; his only interest is to see that justice is done.[1]

■ As the only disinterested lawyer whose only interest is to see that justice is done, and especially as one who, in the eyes of the jury, occupies a position of preeminence and special persuasiveness, the district judge must be assiduous in performing his function as governor of the trial dispassionately, fairly and impartially. On this record we regret that the district judge fell short of the required standard. By acting, not as a disinterested prober for the truth, but as an advocate and, in addition, by acting as a witness, he created a record from which we must infer that defendants and the jury, with justification, concluded that he unduly favored plaintiff over defendants in regard to the point in issue. A recitation of parts of the record show the basis for these conclusions.

■ First, the record shows that repeatedly and consistently the district judge was not content to permit counsel to interrogate the witnesses, and the record discloses no reason why the excessive intervention of the district judge in this regard was necessary. We agree with the statement of the Third Circuit that:

"Where both sides are represented by eminently competent counsel we think it important that the court minimize its own questioning of witnesses, to the end that any such judicial departure from the normal course of trial be merely helpful in clarifying the testimony rather than prejudicial in tending to impose upon the jury what the judge seems to think about the evidence." Groce v. Seder, 267 F.2d 352, 355 (3 Cir. 1959).

More objectionable was the fact that the district judge's questions were usually leading in form. It must be remembered that this was a trial before a jury, and the impact of a question by the court on both the witness and the jury, together with the natural reluctance of counsel to object to the court's questions, which is even greater when the questioning is in the presence of a jury, should not be underestimated. See, In re United States, 286 F.2d 556 (1 Cir. 1961).

In the margin we set forth part of the direct examination of the plaintiff by his own counsel.[2] Aside from ap-

---

1. In the earliest statement of the rule, in this circuit, Judge Dobie said:

"* * * It cannot be too often repeated, or too strongly emphasized, that the function of a federal trial judge is not that of an umpire or of a moderator at a town meeting. He sits to see that justice is done in the cases heard before him; and it is his duty to see that a case on trial is presented in such way as to be understood by the jury, as well as by himself. He should not hesitate to ask questions for the purpose of developing the facts; and it is no ground of complaint that the facts so developed may hurt or help one side or the other. * * * The judge is the only disinterested lawyer connected with the proceeding. He has no interest except to see that justice is done, and he has no more important duty than to see that the facts are properly developed and that their bearing upon the question at issue are clearly understood by the

jury." Simon v. United States, 123 F.2d 80, 83 (4 Cir.), cert. den., 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555 (1941).

2.    DIRECT EXAMINATION OF HARRY EARL POLLARD
By Mr. McLeod:
* * * * *
Q. Okay. What if any treatment did you receive while you were in the hospital?
THE COURT: Just tell the jury, son, in your own words, not technical, what you remember of how they had you in bed, what they did to you, just in boy's language; don't worry about doctor language; they will tell that when they get here. Tell them what they did to you. Did they keep you in bed or have you stretched out?
THE WITNESS: Yes, sir.
THE COURT: Tell the jury.
THE WITNESS: I remember waking up in a operating room where they

parently unnecessary interrogation by the district judge, a close reading of the remarks shows that the district judge supplied the testimony that plaintiff was "strapped down to the bed," that "this cast [was] clear up to the shoulder and all the way down" and that plaintiff was "in a solid cast from the chest down." In assuming a role as witness, the district judge far exceeded his function as judge.

Advocacy on the part of the district judge was also exhibited in his apparent impatience to bring to the attention of the jury demonstrative evidence of the extent of plaintiff's injuries, as the following extract from the record shows.[3] Again, we add, the record shows no reason why the intervention of the district judge at this part of the examination of the plaintiff by his counsel was necessary. Groce v. Seder, supra.

We have adverted to the district judge's misstatement of the contents of plaintiff's deposition in regard to the duration of the period that he experienced pain while in the hospital. If the aura of impartiality on the part of the district judge had not been diminished up to this point in the trial, it was demolished in the full exchange which took place.[4]

had taken a steel pin and run it through my right knee through the bone and afterwards fell asleep and woke up pulling my leg down at the foot of the bed and the head of the bed, and my left leg was in traction.
THE COURT: How long did they keep you in bed when you were under traction, couldn't move?
THE WITNESS: From the night I got hit until sometime in January.
THE COURT: From November until January they had you in, *strapped down to the bed* where you couldn't move?
THE WITNESS: Yes, sir.
THE COURT: All right.
Go ahead.

    *    *    *    *    *

Q. How long were you in the hospital bed at your home?
THE COURT: So the jury will thoroughly understand, *was this cast clear up to the shoulder and all the way down,* you couldn't move?
THE WITNESS: No, sir.
THE COURT: *Somebody had to carry you or move you, you couldn't walk or move at all?*
THE WITNESS: I could.
THE COURT: Move your arms, but you couldn't move your body or hips or anything, could you?
THE WITNESS: No, sir.
THE COURT: All right.
So the jury understands *he was in a solid cast from the chest down.*
All right. Go ahead.
(emphasis supplied)

3. CONTINUATION OF DIRECT EXAMINATION OF MR. POLLARD
By Mr. McLeod:
Q. What is the condition of your leg at this time?

A. I can't bend my right leg all the way back and it is an inch shorter.
THE COURT: Get down and show the jury. Get down and show them where you can't bend it and how, so walk in front of them. Pull your trousers up and let them see it if you want to, I mean if they can't.

    *    *    *    *    *

MR. McLEOD: Take your pants off.
THE COURT: Let him do whatever he wants to.
MR. McLEOD: Take your pants off if you will and show the jury your right leg. You might take your shoes off.
THE COURT: He can walk up there and let you look at it.
MR. McLEOD: Take your shoes off and your pants all the way off so you won't trip.
(Witness complied)
MR. McLEOD: You walk down here.
(Witness complied)
THE COURT: Stop right there. Let them look over, the jury can. You point out to them, son, about the knee and bend it, show them where the trouble is.
THE WITNESS: Right there is as far as I can bend the leg, (demonstrating).
THE COURT: In other words, you can't sit down or squat all the way down.
THE WITNESS: No, sir.

4. CROSS-EXAMINATION OF MR. POLLARD
By Mr. Dupree:
    *    *    *    *    *
Q. And that went on for about two weeks, didn't it?
A. Longer than that.
Q. About two weeks?

Again, the district judge acted as witness. He made his position crystal clear that, irrespective of the evidence, plaintiff's pain persisted over a considerable period of time; worse, he depicted counsel for defendants as taking an unfair advantage when counsel undertook only to represent his clients' interests and sought to inquire about a manifest inconsistency between plaintiff's testimony and his earlier deposition.

> THE COURT: Let's be fair with the boy. It went on for a year. What do you mean two weeks, Mr. Dupree? I can't be operated on—*I don't care what he said in that deposition.*
> MR. DUPREE: I follow it with some questions.
> THE COURT: Yes, sir. But I don't want you to take this young boy like this and say he only had two weeks of pain when he was in a cast from his chest down to his toes for four months and then went back for two operations, and *there is no question in my mind he hurt all the time for a long period of time.* You take it from there. There isn't any question about it.
> MR. DUPREE: No, sir.
> THE COURT: Is there?
> MR. DUPREE: Your Honor, I would just like to ask him the length of time over which he experienced this pain.
> THE COURT: *You can ask him, but I will tell the jury to use their own experiences on that. I am not going to allow this young boy who obviously doesn't know if he is under medication to have the record show that he only had two weeks of pain on a broken leg of this type and the time that he was in the cast and coming back a year later and wheel chair. You know it isn't right yourself. And he had to have a cast to sleep on at night. I mean I want the jury to get the facts.*
> Go ahead.
> MR. DUPREE: Yes, sir.
>
> \*  \*  \*  \*  \*
>
> Q. Your deposition in this case was taken by me on the eleventh of March, 1967, wasn't it?

We conclude that the manner in which the district judge conducted the trial in the instances set forth ineluctably had its influence on the jury to the prejudice of defendants. Notwithstanding their admission of liability, defendants are entitled, in a new trial, to the fair and impartial assessment of plaintiff's damages, which they were denied.

Reversed and remanded.

> A. I think so.
> Q. And at that time you were asked questions concerning your injury, were you not?
> A. Yes, sir.
> Q. Is your recollection of how you felt at that time as good as it is now?
> A. When I was sitting down talking to you my leg was hurting.
> Q. The question, sir, is whether or not your recollection of how you had felt in the hospital and everything at the time when your deposition was taken was as good as it is now?
> A. No, sir.
> Q. What have you done since that time to refresh your recollection or make you know anything more about it than you did at that time?
> THE COURT: Mr. Dupree, wait a minute, I am not going to permit this. *That is not fair at all.* You want to introduce his deposition, introduce it, let the jury read it. I mean there is no—this boy—*there is no evidence that this boy has changed his story in the slightest. There isn't. I am not going to stand still for it on this kind of a case. This is an infant.*
> MR. DUPREE: May I have an exception?
> THE COURT: You may have all the exceptions you want.
> MR. DUPREE: Yes, sir.
> THE COURT: Yes, sir.
> But I want the record to show that this is an infant, and *I am not going to let you infer or make a statement that the boy has changed his story when there isn't a bit of evidence to indicate that he has.*
> (emphasis supplied)