930 F.2d 23
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert F. BAXTER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nancy BAXTER, Defendant-Appellant.
 No. 90-5801.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 10, 1991.
Decided April 9, 1991.
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CR-89-25-A)
 Guy M. Harbert, III, Gentry, Locke, Rakes & Moore, Roanoke, Va., Raymond R. Robrecht, Salem, Va. (argued), for Appellants; S.D. Roberts Moore, Melissa W. Robinson, Gentry, Locke, Rakes & Moore, Roanoke, Va., on brief.
 Brett Mary Dignam, Tax Division, United States Department of Justice, Washington, D.C. (argued), for Appellee; Shirley D. Peterson, Assistant Attorney General, Robert E. Lindsay, Alan Hechtkopf, Tax Division, United States Department of Justice, Washington, D.C., John P. Alderman, United States Attorney, Karen B. Peters, Assistant United States Attorney, Roanoke, Virginia, on brief.
 W.D.Va.
 AFFIRMED.
 Before CHAPMAN, WILKINSON and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Dr. Robert F. Baxter and Mrs. Nancy Baxter appeal their convictions of income tax evasion, 26 U.S.C.A. Sec. 7201 (West 1989), and subscribing a false amended joint individual income tax return, 26 U.S.C.A. Sec. 7206(1) (West 1989). Dr. Baxter appeals his conviction of conspiracy to defraud the Internal Revenue Service. 18 U.S.C.A. Sec. 371 (West 1966). Raising numerous issues on appeal, appellants claim primarily that the district court deprived them of a fair trial by creating an inference that a defense exhibit was inaccurate, by improperly questioning a defense witness, and by reprimanding defense counsel. We affirm.
 
 I.
 
 2
 Evidence adduced at trial demonstrated that appellants did not include approximately $290,000 of taxable income on their 1982 and 1983 jointly filed individual income tax returns. The unreported income included compensation for pre-employment physical examinations performed by Dr. Baxter at the behest of the Department of Labor and various coal companies, compensation from Grundy Hospital for services rendered to the hospital by Dr. Baxter, and consulting fees paid to Dr. Baxter by Healthdyne Corporation. This income resulted in a tax liability of approximately $129,000.
 
 
 3
 Grundy Hospital was owned by Dr. Baxter and three other doctors. The principal witness for the government was hospital administrator William Mills. In performing his administrative duties, Mills received and endorsed numerous checks. The defense attempted to prove that Mills created records indicating that he transferred the cash proceeds of the checks to Dr. Baxter, but that he actually retained the proceeds for himself. In support of this theory, counsel introduced as an exhibit a chart entitled "Money Received by Bill Mills" that is central to one of the primary issues raised on appeal. The defense intended to refute Mills' testimony that cash proceeds were paid to Dr. Baxter and other doctors by proving that the proceeds from the schedule of checks listed on the chart were received by Mills and not forwarded to the doctors as claimed by Mills.
 
 
 4
 The government objected to the exhibit, contending that the title was conclusive and inaccurate because several of the checks were not payable to the order of Mills. In response to the objection, defense counsel offered to remove the title. The court adopted the suggestion of defense counsel and, in the presence of the jury, requested that the title be removed because it was misleading. Defense counsel then decided to withdraw the exhibit. The court then stated, "You can cross-examine [Mills] all you want about any of these checks."
 
 
 5
 The government later introduced an exhibit entitled "Currency to Dr. Baxter." Defense counsel stated that it had no objection to the exhibit but requested an instruction to the jury. The court complied with counsel's request and instructed the jury that the title was not a statement of fact but was based on the testimony of witnesses. The court cautioned that the accuracy of the title was dependent upon the weight afforded by the jury to the testimony of those witnesses. The government introduced several exhibits with similar titles, for example, "Grundy Medical Funds Received by Dr. Baxter." The court instructed the jury that the titles did not represent statements of fact and that the government had the burden to establish that Dr. Baxter actually received the funds as represented by the exhibits.
 
 
 6
 Appellants claim the court prejudiced their defense by requiring that the title to the defense exhibit be removed, by commenting on the record that the title was misleading, and by allowing the government to introduce charts with similar titles. The court did, however, encourage defense counsel to conduct a thorough cross-examination of Mills regarding the checks listed in the defense exhibit. The defense did not object to the introduction of several of the government charts, and the court promptly instructed the jury as to the evidentiary weight properly afforded to the titles of the government exhibits. Cf. United States v. Billups, 692 F.2d 320, 327 (4th Cir.1982) (no error when "judge's curative instructions served to assist the jury in giving proper weight to his comments"), cert. denied, 464 U.S. 820 (1983). The rulings and statements by the court regarding these exhibits did not deny appellants a fair trial.
 
 II.
 
 7
 On several occasions during a lengthy cross-examination of Mills, the court interrupted to request that defense counsel refrain from cross-examining with statements phrased in a testimonial manner:
 
 
 8
 Q: And he was your assistant administrator over at the hospital, wasn't he?
 
 
 9
 A: Yes, sir. Dr. Baxter was my boss and we all three got checks from that.
 
 
 10
 Q. Well, shall we talk about that then? As I see it, would it surprise you--
 
 
 11
 THE COURT: Well, no, let's don't you see it. I've let you go along and, you know, you've been testifying about ninety percent and then you come back and summarize. You know how to cross examine a witness, Mr. Wilson. So, now, let's go ahead, but I'm not going to let you testify. Okay.
 
 CROSS EXAMINATION CONTINUED BY MR. WILSON:
 
 12
 .............................................................
 
 
 13
 ...................
 
 
 14
 * * *
 
 
 15
 Q: So all of these appearances in front of the Grand Jury, you lied in all of those if that's true?
 
 
 16
 A: It was only to protect my friends.
 
 
 17
 .............................................................
 
 
 18
 ...................
 
 
 19
 * * *
 
 
 20
 Q: You were still protecting them?
 
 
 21
 A: I was up until the point I was not going to take the blame for it.
 
 
 22
 Q: But as of the date--As of that date, you had already implicated them and you gave twelve or thirteen more statements and all of these statements we have gone over here, these inconsistencies occurred after the date that you had implicated them.
 
 
 23
 A: That could be.
 
 
 24
 THE COURT: I don't want to interrupt, but there you go testifying again, Mr. Wilson.
 
 
 25
 MR. WILSON: Your honor, I understand I'm not a witness but I--
 
 
 26
 THE COURT: You cannot be a witness and you're just testifying and the U.S. Attorney isn't objecting, but we've got to move this thing along. Ask him any questions you want to ask, but don't you testify. All right. Let's go.
 
 
 27
 The court also questioned defense witness Eugene Street in an effort to clarify prior testimony and to eliminate any uncertainty as to whether certain monies were included on a W-2 Form.
 
 
 28
 The trial lasted seven days and included the testimony of 45 witnesses. At the conclusion of the presentation of evidence, the court instructed the jury to disregard questions and comments made by the court during the course of the proceedings:
 
 
 29
 The rulings which I have made on objections to evidence should in no way indicate to you how I might or might not feel about any part of this case. Likewise, during the course of the trial I have occasionally made comments to lawyers to hurry them on and so forth or have asked questions of witnesses and once or twice I think I have admonished a witness concerning the manner in which he should respond to the questions being asked. Do n ot assume from anything that I may have said that I have any opinion concerning any of the issues in this case. Except for my charge to you on the law you should disregard anything I may have said during the trial in arriving at your own findings of the facts in this case.
 
 
 30
 The jury returned verdicts of guilty on all counts.
 
 
 31
 In a federal trial by jury, "the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct." Quercia v. United States, 289 U.S. 466, 469 (1933). This court has articulated the role of the judge as governor of the proceedings:
 
 
 32
 [I]t is his duty to see that a case on trial is presented in such way as to be understood by the jury, as well as by himself. He should not hesitate to ask questions for the purpose of developing the facts; and it is no ground of complaint that the facts so developed may hurt or help one side or the other.
 
 
 33
 Simon v. United States, 123 F.2d 80, 83 (4th Cir.), cert. denied, 314 U.S. 694 (1941). A judge must preside over the trial in a manner that is impartial, fair, and dispassionate. Pollard v. Fennell, 400 F.2d 421 (4th Cir.1968). We find no failure to discharge this responsibility.
 
 
 34
 Appellants claim that the court erred in reprimanding counsel during the cross-examination of Mills and in assuming a prosecutorial manner in its questioning of defense witness Street. We review the conduct of the district court under an abuse of discretion standard. See Quercia, 289 U.S. at 470. We cannot say that the court abused its discretion in issuing an appropriate admonishment to counsel in order to assure the proper conduct of the proceedings. We also find that on the specific facts of this case no abuse of discretion occurred when the court questioned a defense witness in an effort to clarify testimony on a factual issue. See United States v. Cassiagnol, 420 F.2d 868, 879 (4th Cir.) (court "entitled to propound questions pertinent to a confused factual issue which requires clarification"), cert. denied, 397 U.S. 1044 (1970). Further, any possible error was cured when the jury was instructed by the court to disregard all inferences and comments by the court and to arrive at its own findings of fact. See United States v. Love, 767 F.2d 1052, 1064 n. 15 (4th Cir.1985), cert. denied, 474 U.S. 1081 (1986).
 
 III.
 
 35
 Appellants also claim that the district court erred in refusing to instruct the jury that only three items of income were alleged by the government to have been willfully omitted from appellants' tax returns, in failing to dismiss the indictment or suppress evidence arising from Dr. Baxter's appearance before the grand jury, and in admitting into evidence Mills' plea agreement and incriminating statements by co-defendant Berry. Mrs. Baxter claims that the evidence presented is insufficient to support the verdict and that the court erred in refusing to grant her motion for severance. These remaining issues are without merit.
 
 
 36
 AFFIRMED.