70 F.3d 1263
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Diane C. SAFAR, Plaintiff-Appellant,
v.
Michael ESPY, Secretary, Department of Agriculture,
Defendant-Appellee.
 No. 95-1061.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 25, 1995.
Decided Nov. 21, 1995.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frank A. Kaufman, Senior District Judge. (CA-93-604-K)
 ARGUED: Joseph Jeffrey Griffith, Westminster, Maryland; Edmund Joseph O'Meally, BLUM, YUMKAS, MAILMAN, GUTMAN & DENICK, P.A., Baltimore, Maryland, for Appellant. Larry David Adams, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. ON BRIEF: Lynne A. Battaglia, United States Attorney, Greenbelt, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before RUSSELL, MICHAEL, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 After a bench trial, the district court found that an employee had failed to prove that her former employer had violated Title VII by discriminating against her based on her sex and by retaliating against her for filing a sex discrimination claim. The employee now appeals the judgment entered in the employer's favor. Finding no error, we affirm.
 
 I.
 
 2
 In the summer of 1990, Diane C. Safar, a program assistant with the Agricultural Stabilization and Conservation Service of the United States Department of Agriculture (the Service), entered a training program in order to become a county executive director. Specifically, she hoped to become the county executive director in Baltimore County. Before Safar completed her training program, however, the Service appointed a male, Stuart Green, to that position. Believing that Green's appointment evidenced sex discrimination, Safar filed an EEO complaint. In September 1990, Safar and the Service entered into a settlement agreement in which the Service agreed to reconsider candidates for the Baltimore County Executive Director position and to interview Safar for the position. After the Baltimore County Operations Committee (the Committee) interviewed Safar, Green, and a third applicant, the Service again offered the position to Green.
 
 
 3
 Although disappointed, Safar returned to her previous position as a program assistant. Safar contends that after her return, her immediate supervisor, Elizabeth Schaeffer, assigned her only menial tasks and spread false rumors about her, including rumors relating to her EEO complaint. This conduct, allegedly in retaliation for Safar's filing of the complaint, so poisoned the atmosphere at work that Safar asserts she felt compelled to resign in March 1991.
 
 
 4
 By September 1991, Green had resigned as Baltimore County Executive Director and the position was again available. The Committee interviewed Safar and, once again, rejected her, this time leaving the position vacant. On February 25, 1993, Safar filed this action, claiming the Service had violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Secs. 2000e to 2000e-17, by discriminating against her based on her sex and by retaliating against her for filing an EEO complaint.
 
 
 5
 After a bench trial, the district court ruled that Safar had not proved her claims. Nevertheless, because testimony at trial revealed that the Service had not complied with all of the terms of the settlement agreement, the district court ordered the Service to re-evaluate Safar's application for promotion. After this further review, the Service informed the court that its evaluation of Safar remained unchanged. The district court then entered final judgment in favor of the Service.
 
 II.
 
 6
 Safar's first contention on appeal is that the district court committed clear error in concluding that she had not proved by a preponderance of the evidence her claims that the Service had violated Title
 
 VII.
 
 7
 To recover under Title VII, a plaintiff must first establish a prima facie case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If she does, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " Id. (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). If the defendant articulates such a reason, the plaintiff must then prove by a preponderance of the evidence that the employer's articulated reason is merely a pretext for intentional unlawful discrimination. Burdine, 450 U.S. at 253. The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id.
 
 
 8
 Safar asserts that she proved that the Service's explanation for failing to promote her was pretextual and that the Service in fact intentionally discriminated against her. She relies on her own testimony that, during her first interview, an interviewer told her that she would not be allowed sick leave even though she was seven months pregnant and would clearly need sick leave; evidence that she was a more qualified candidate for promotion than Green; and evidence that questions she was asked her during her interviews were more difficult than questions asked of Green. Members of the Committee testified that, at the time of the first interview, they decided not to promote Safar because of her poor communication skills. Of the three candidates interviewed, the Committee judged Green to be the best applicant due to his experience; Safar was judged to be the weakest applicant, behind Green and a female applicant. The Committee members further testified that, at the time of the second interview, they decided not to promote Safar because of her poor communication skills, her actions to avoid agency regulations, and her overall inability to get along with others.
 
 
 9
 Safar maintains that the district court erred in crediting the Service's explanations for its failure to promote her; she claims that these explanations were simply a pretext for intentional discrimination. That argument is meritless. The explanations the Service offered, although subjective, were legitimate and non-discriminatory. See Tingley v. Henson Aviation, Inc., 789 F.2d 275, 277 (4th Cir.1986); Page v. Bolger, 645 F.2d 227, 230 (4th Cir.), cert. denied, 454 U.S. 892 (1981). Regardless of the truth of these explanations, the burden shifted back to Safar to prove that intentional discrimination was the true explanation of the Service's actions. St. Mary's Honor Center v. Hicks, --- U.S. ---, ---, 113 S.Ct. 2742, 2747 (1993).
 
 
 10
 Nor is Safar's assertion that the trial judge erred in determining that she had not proved intentional discrimination any more persuasive. As the trier of fact, the district court concluded that Safar had not "come close" to meeting her burden of proving by a preponderance of the evidence that the Service intentionally discriminated against her. In reaching this conclusion, the court evaluated the conflicting accounts of a number of witnesses whose testimony provided the principal evidence in the case. This testimony required the trial court to make numerous credibility determinations. The court resolved the credibility issues against Safar, indicating that it believed the Committee members had testified truthfully concerning the impartial manner in which they conducted the interviews and made their decisions concerning Safar's promotion. "Absent extraordinary circumstances, we will not disturb a factfinder's credibility determinations.... '[D]ue regard shall be given to the opportunity of the trial court to judge ... the credibility of the witnesses.' " Columbus America-Discovery Group v. Atlantic Mutual Ins. Co., 56 F.3d 556, 567 (4th Cir.1995) (quoting Fed.R.Civ.P. 52(a)), cert. denied, 64 U.S.L.W. 3284 (Oct. 16, 1995) (No. 95-415); Lawrence v. Mars, Inc., 955 F.2d 902, 905 (4th Cir.), cert. denied, 113 S.Ct. 76 (1992); see also Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).
 
 
 11
 With regard to Safar's retaliation complaint, the burden-shifting procedure is substantially the same as for her sex discrimination claim. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985). To succeed on this claim, Safar had to prove by a preponderance of the evidence either that the Service's conduct, causing her constructive discharge, or its refusal to promote her, resulted from an intentional effort to retaliate against her for filing a discrimination claim. Safar again relies on witnesses she presented at trial who testified that after she filed her EEO complaint, Schaeffer retaliated against her by assigning her menial tasks, spreading false rumors about her, directing the staff to maintain of log of her activities, and generally creating a hostile work environment. With regard to the Service's refusal to promote her, Safar notes that in her second interview for promotion, the Committee interviewer asked her questions relating to her EEO complaint, even though the settlement agreement with the Service included a provision that the agreement was to remain confidential. Safar contends that, in the face of this evidence, the district court's conclusion that she had not proved her retaliation case by a preponderance of the evidence was clearly erroneous.
 
 
 12
 The evidence relating to the retaliation claim again involved numerous credibility determinations. The trial judge did not credit the testimony of certain witnesses whose testimony supported Safar's position, finding they had reason to be biased against the Service. Additionally, other witnesses testified that it was Safar, not Schaeffer, who was responsible for the contentious atmosphere at work, and the trial judge ultimately found their accounts more believable. Similarly, although the trial court acknowledged that in her second interview, Safar was asked difficult questions relating to rumors that had been spread about her, including rumors relating to the EEO complaint, the court concluded, based on Committee members' testimony, that Safar's interviews were conducted in a fair, impartial manner and that no evidence indicated retaliation or discrimination.
 
 
 13
 Again, these credibility and factfinding determinations were for the trial judge to make. Fed.R.Civ.P. 52(a). "As an appellate court we are not authorized to check the credibility determinations made by the trier of fact." McNairn v. Sullivan, 929 F.2d 974, 978 (4th Cir.1991). The district court did not clearly err in concluding that Safar had failed to prove her claims by a preponderance of the evidence. Anderson, 470 U.S. at 573.
 
 III.
 
 14
 Safar next contends that the district court abused its discretion by repeatedly questioning witnesses, threatening counsel with sanctions, and generally limiting both trial counsels' ability to present their cases. Although review of the trial transcript indicates that the trial judge did indeed repeatedly interrupt the attorneys and engage in lengthy questioning of witnesses, we cannot conclude that his conduct denied Safar a fair trial.
 
 
 15
 A trial judge is not merely an umpire of the proceedings, but functions "as a governor to see that justice is done." Crandell v. United States, 703 F.2d 74, 77 (4th Cir.1983); Pollard v. Fennell, 400 F.2d 421, 423-24 (4th Cir.1968). In discharging that function, the judge may question witnesses to clarify their testimony or to draw out further information. See Crandell 703 F.2d at 77-78; Fed.R.Evid. 614. The judge "should not hesitate to ask questions for the purpose of developing the facts; and it is no ground of complaint that the facts so developed may hurt or help one side or the other...." United States v. Parodi, 703 F.2d 768, 775 (4th Cir.1983) (quoting Simon v. United States, 123 F.2d 80, 83 (4th Cir.), cert. denied, 314 U.S. 694 (1941)). There are, of course, limits to the judge's role. Above all, the trial judge must remain neutral. The "trial judge must assiduously perform his function as governor of the trial dispassionately, fairly, and impartially." Crandell, 703 F.2d at 78; see Moore v. United States, 598 F.2d 439, 442 (5th Cir.1979) ("Only when the judge's conduct strays from neutrality is the defendant thereby denied a constitutionally fair trial.").
 
 
 16
 The cases Safar cites to support her position that the judge's frequent interruptions and questioning denied her the right to a fair trial are inapposite. All involved instances where the judge's questioning revealed a bias or prejudice toward one of the parties. See Sit-Set, A.G. v. Universal Jet Exchange, Inc., 747 F.2d 921, 926 (4th Cir.1984); Crandell, 703 F.2d at 78; Pollard, 400 F.2d at 426. There is no such evidence here;* the trial judge repeatedly interrupted counsel for both sides. Very frequent interruptions like those in this case are seldom necessary and often distracting and so should be avoided. However, they do not require reversal here. The trial court's conduct did not deny Safar "a fair, as distinguished from a perfect, trial." United States v. Head, 697 F.2d 1200, 1209 (4th Cir.1982) (quoting United States v. Robinson, 635 F.2d 981, 984 (2d Cir.1980), cert. denied, 451 U.S. 992 (1981)), cert. denied, 462 U.S. 1132 (1983); see also Parodi, 703 F.2d at 776.
 
 IV.
 
 17
 Safar's final argument is that the district court erred in ordering the Service to re-evaluate her application for promotion. The district court did so after trial testimony indicated that the Service had failed to comply with the terms of the settlement agreement, including its promises to keep the agreement confidential and to review Safar's files before making a decision on her promotion. Additionally, testimony revealed that the Committee members were aware of false rumors concerning Safar at the time of the second interview. In light of these disclosures, the trial judge suggested to the parties that he order the Service to re-evaluate Safar's application. Both parties agreed to the suggestion.
 
 
 18
 In this appeal, Safar concedes that the trial court is granted broad remedial powers in cases such as this, see Ford v. Motor Co. v. E.E.O.C., 458 U.S. 219 (1982); Sledge v. J.P. Stevens & Co., 585 F.2d 625, 653 (4th Cir.1978), cert. denied, 440 U.S. 981 (1979); United States v. Dillon Supply Co., 429 F.2d 800, 804 (4th Cir.1970), and that the trial court has the authority to remand a case to the agency. See Pollard v. Grinstead, 741 F.2d 73 (4th Cir.1984). Nevertheless, Safar contends that the district court's remand order constituted reversible error.
 
 
 19
 Assuming without deciding that Safar has not waived this claim, it is meritless. Safar contends that because the evidence at trial clearly proved that the Service discriminated and retaliated against her when it rejected her application for promotion, it was an abuse of discretion for the trial judge to remand the case for reconsideration by the Service, the very agency that had discriminated and retaliated against her in the first place. This argument must be summarily rejected because in fact the district court found that the evidence at trial did not prove that the Service had discriminated or retaliated against Safar. We have now affirmed that ruling; thus, Safar's final contention is also wholly without support.
 
 
 20
 For the foregoing reasons the district court's judgment is
 
 
 21
 AFFIRMED.
 
 
 
 *
 We reject Safar's allegation that the trial judge's prejudice was revealed by his failure to comment on some of the evidence she presented at trial and by his alleged "mischaracterization" of other evidence. The trial judge is not required to comment on all the evidence and his characterization of the evidence in this case does not indicate prejudice when viewed in the context of the entire trial. See Parodi, 703 F.2d at 773