**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4195**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SHAUN BROWN,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Henry Coke Morgan, Jr., Senior District Judge.  (2:17-cr-00169-HMC-DEM-1)

Submitted: March 17, 2020                                            Decided: July 13, 2020

Before KEENAN and RUSHING, Circuit Judges, and Thomas E. JOHNSTON, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Rushing wrote the opinion, in which Judge Keenan and Chief Judge Johnston joined.

Lawrence H. Woodward, Jr., RULOFF, SWAIN, HADDAD, MORECOCK, TALBERT & WOODWARD, P.C., Virginia Beach, Virginia, for Appellant.  G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Elizabeth M. Yusi, Assistant United States Attorney, Melissa E. O'Boyle, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

A jury determined that Shaun Brown defrauded a federal government program designed to provide meals to low-income children during the summer so they would not go hungry when school was out of session. Instead of feeding large numbers of children as she claimed, Brown took government funds, bought and trashed excess food, and then falsified reports recounting the number of children fed. The jury convicted Brown of conspiracy to commit wire fraud and cause false records, wire fraud, and theft of government funds. On appeal, Brown raises various challenges to her convictions and the district court's rulings at trial. Because these arguments lack merit, we affirm.

I.

A.

The Summer Food Service Program (SFSP) is a United States Department of Agriculture (USDA) initiative created to ensure that low-income children continue to receive healthy meals throughout the summer when they do not have access to free-lunch programs in school. *See* 42 U.S.C. § 1761; 7 C.F.R. § 225.1. SFSP is administered by state agencies, which funnel grants from USDA to nonprofit service institutions, referred to as sponsors. *See Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.*, 557 Fed. App. 87, 88 (2d Cir. 2014) (citing 42 U.S.C. § 1761). In Virginia, the Virginia Department of Health (VDH) oversees the sponsors who serve meals to children. JOBS Virginia Community Development Corporation (JOBS), a nonprofit established by

3

Brown and her mother, Jenever Brown, was one of the Virginia sponsors of SFSP in the summers of 2011 and 2012.

Brown and her mother were responsible for preparing and providing accurate paperwork and information to VDH. Both received training on SFSP sponsor responsibilities, including the obligation to maintain meal counts that were recorded contemporaneously with children being served food in order to be reimbursed. Sponsors were required to complete a daily meal count sheet—a form with the date, the meal time, and a list of numbers that the sponsor checked off as children went through the line to receive their meals. After the meal was served, the sponsor would enter the last number checked off into another box on the form and sign the form attesting to the accuracy of that number. Then at the end of each month, sponsors used the daily meal count sheets to submit an electronic claim stating how many meals they had served to children. Although VDH advanced funds to sponsors based on the projected number of meals each sponsor planned to serve, sponsors could seek reimbursement only for complete meals served to eligible children. If a sponsor did not serve sufficient meals to cover the advanced funds, the sponsor was required to reimburse any excess funds to VDH.

After the summer of 2011, VDH noted several deficiencies in JOBS's recordkeeping, including failure to keep accurate meal counts, to properly oversee the 85 meal sites, and to maintain an accurate administrative budget. For example, VDH noted that the daily meal count sheets often reflected prohibited "block claiming," or claiming the same number of meals every day at each site. VDH determined that JOBS had been overpaid in disallowed meals and undocumented expenditures by a total of $73,162.10.

4

VDH notified JOBS that it must repay this amount and that the repayment should not come from the federal funds provided for the 2012 summer.

In the summer of 2012, the situation worsened. Brown and her mother routinely falsified paperwork to state that JOBS fed hundreds more children than JOBS actually fed. Brown then caused her mother to submit four false electronic claims to VDH for the number of meals served.

As part of this scheme, Brown directed employees to inflate the number of meals served on the meal count sheets and insisted that the "meals served" number match the "meals prepared" number, regardless of the actual number of meals served. Brown also asked employees to sign blank meal count sheets and forge JOBS employees' signatures on meal count sheets. In some instances, the forgeries were so sloppy that employees' names were misspelled.

Despite knowing that meal count sheets must be completed as children were served food, Brown directed employees to complete or alter meal count sheets after the fact. For example, in July 2012, Brown called employees into the office to prepare the meal count sheets for meals served in June. When one employee refused to fabricate the meal count numbers in a spreadsheet to be submitted to VDH, Brown fired her. Again in September 2012, Brown called employees into the office to falsify meal count sheets for prior months.

JOBS expenditures also continued to be a problem. VDH received complaints from vendors and employees that JOBS was not paying them. Brown vastly over-ordered food and milk to justify her inflated meal count numbers, resulting in multiple complaints of rotting food in unauthorized dumpsters. Despite being told not to do so, Brown used

5

federal funds to repay her debt arising from the overpayment of SFSP funds in 2011. And Jenever Brown, on behalf of JOBS, wrote checks to "cash" and to Shaun Brown without documentation.

In May 2013, VDH denied JOBS's application to be a 2013 SFSP sponsor. Shortly thereafter, Brown and her mother filed a civil rights complaint against USDA, VDH, and employees from those agencies, claiming racial discrimination and a lack of due process. That case was dismissed with prejudice. *Brown v. U.S. Dep't of Agric.*, No. 1:17-cv-1377 (E.D. Va. May 11, 2018).

## B.

On May 10, 2018, a federal grand jury in the Eastern District of Virginia issued a superseding indictment charging Brown with two counts of wire fraud, one count of conspiracy to commit wire fraud and to cause false records related to a federal program, and one count of theft of government property. *See* 18 U.S.C. §§ 371, 641, 1343. Brown's trial began on October 22, 2018. Twelve former JOBS employees testified that Brown directed them to falsify meal counts, that they served hundreds fewer meals than claimed on the forms, and that they threw away massive amounts of food. The Government also called other witnesses, including Cindy Williamson, a former employee of the Virginia Office of Inspector General, who testified regarding the meal counts JOBS submitted to VDH. In one exhibit, Williamson summarized the number of meals purportedly served from three sources: (1) the daily meal count sheets JOBS submitted to VDH, (2) a spreadsheet JOBS submitted to VDH representing the number of meals served in July and August 2012, and (3) the meals JOBS claimed in the online reimbursement forms. None

6

of the numbers matched one another. Brown called five witnesses in her defense, including her mother. The jury found Brown guilty on all counts.

## II.

On appeal, Brown disputes two of the district court's evidentiary rulings, finds fault with the court's questioning of a witness, contests the court's rejection of a proposed jury instruction, challenges the sufficiency of the evidence to support her convictions, and argues that the indictment should have been dismissed for selective prosecution. We address each argument in turn.

## A.

Brown first contests two of the district court's evidentiary rulings: (1) excluding evidence about a nationwide audit of SFSP, and (2) admitting Williamson's testimony about the summary charts.

We review "evidentiary rulings for an abuse of discretion." *United States v. Cloud*, 680 F.3d 396, 401 (4th Cir. 2012). "An abuse of discretion occurs only when a trial court has acted arbitrarily or irrationally in admitting evidence, when a court has failed to consider judicially recognized factors constraining its exercise of discretion, or when it has relied on erroneous factual or legal premises." *United States v. Hedgepeth*, 418 F.3d 411, 419 (4th Cir. 2005) (internal quotation marks omitted).

## 1.

During trial, Brown attempted to introduce published testimony from the Director of the Education, Workforce, and Income Security division of the Government Accountability Office (GAO) before a subcommittee of the U.S. House of Representatives

summarizing the findings of a national audit of SFSP from 2007 to 2016. The testimony included an overview of a multiyear analysis of challenges regarding the administration of the program and made recommendations for future oversight. Brown argues the evidence was relevant to show that she lacked criminal intent and merely had difficulty managing the program's administrative burdens.

The district court did not abuse its discretion in excluding this evidence. The audit's bird's-eye view of the SFSP program was irrelevant to determining whether Brown intentionally falsified documents and misused federal funds. *See United States v. Soto*, 799 F.3d 68, 91–92 (1st Cir. 2015) (affirming district court's refusal to admit a GAO report on the failure of mortgage lenders across the nation to follow underwriting standards because the report did not connect those national trends to the specific lenders the defendant defrauded or suggest they condoned lying on a mortgage application). Even assuming the evidence was probative of Brown's good faith, it would have served only to confuse the issues before the jury by conflating general program challenges with Brown's intent to defraud.

2.

Brown also challenges the admission of Williamson's testimony about charts submitted under Federal Rule of Evidence 1006, which provides that a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Charts admitted pursuant to the rule must be accurate, and the records summarized must otherwise be admissible into evidence. *United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004).

The various charts about which Williamson testified accurately summarized voluminous admissible documents. Indeed, Brown does not contest the admission of the daily meal count sheets or other documents summarized in the charts. And, contrary to Brown's contention, several witnesses testified to the sources of the numbers in those documents and Williamson's summary charts: JOBS employees testified that they completed the meal count sheets and entered numbers into the spreadsheets, and Jenever Brown testified that she and Brown completed the electronic claims for reimbursement. The district court did not abuse its discretion in admitting Williamson's testimony.

B.

Next, Brown argues that the district court erred by asking Jenever Brown follow-up questions during her testimony regarding her daughter's time sheets and education. For example, the court asked Jenever Brown—the president of JOBS—about the fact that her daughter's time sheets claimed 31 days in June and September, about whether her daughter attended Brown University and had a diploma from there, about whether her daughter had a diploma from the University of Oxford, and if she ever visited her daughter at Oxford. Because Brown did not object to the court's questions at trial, we review for plain error. To establish plain error, Brown must show a clear error that affected her substantial rights. *United States v. Godwin*, 272 F.3d 659, 672–673 (4th Cir. 2001) (citing *United States v. Olano*, 507 U.S. 725, 732–734 (1993)). We will correct such an error only if it "seriously

9

affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks omitted).

"[J]udicial intervention during witness testimony implicate[s] two core trial oversight responsibilities:" (1) the court's responsibility to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of truth" and (2) the court's "affirmative duty to prevent trials from becoming protracted and costly affairs." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006) (internal quotation marks omitted). These "[q]uestions of trial management are quintessentially the province of district courts." *Id.* We will not intervene "unless the 'judge's comments were so prejudicial as to deny [the defendant] an opportunity for a fair and impartial trial.'" *Godwin*, 272 F.3d at 673 (quoting *United States v. Gastiaburo*, 16 F.3d 582, 589–590 (4th Cir. 1994)).

Here, the district court asked a limited series of pertinent questions in a respectful manner. *See United States v. Parodi*, 703 F.2d 768, 777 (4th Cir. 1983) (finding no error where judge engaged in "minimal" questioning that did nothing more than "clarify the relevant issues for the jury without any effort to aid or prejudice either the prosecution or the defendants"). The court's focused questions stand in stark contrast to the type of improper intervention that we have previously held requires reversal. *See*, *e.g.*, *United States v. Cassiagnol*, 420 F.2d 868, 879 (4th Cir. 1970) (remanding for new trial where judge engaged in "exhaustive questioning" of a defendant, "often in a chiding, seemingly hostile manner" and "persistent[ly] and repeated[ly] interrupt[ed] . . . defense counsel

during the trial and during counsel's summation with sharp, critical comments"); *Pollard v. Fennell*, 400 F.2d 421, 424–425 (4th Cir. 1968) (remanding for new trial where judge's intervention was "excessive," the judge's questions were leading, and the judge "supplied" the testimony and "assum[ed] a role as [a] witness").  Brown contends that the court's questions implied disbelief in her honesty.  We cannot glean any such implication from the record.  Moreover, the court properly instructed the jury not to interpret the court's questions as indicating an opinion on the evidence, thereby neutralizing any potential implication that the court viewed Brown's education or honesty with suspicion.  *See Smith*, 452 F.3d at 333 (finding no error where the court's conduct "revealed no bias" and the court properly instructed the jury regarding questions from the bench).  The district court did not plainly err in questioning Jenever Brown.

## C.

Brown next asserts that the district court abused its discretion by declining to give her requested jury instruction on good faith.  Her proposed instruction stated:

> An essential element of all counts of the INDICTMENT is an intent to defraud.  Therefore, good faith on the part of Shaun Brown is a complete defense.  Defendant has no burden to prove her good faith, rather, the burden is always on the government to prove intent to defraud and a lack of good faith on the part of the Defendant.  Official acquiescence and/or condonation leaves no room for Defendant to have the specific criminal intent to defraud the Virginia Department of Health.  If you find from all the evidence that the Virginia Department of Health either condoned or acquiesced in Shaun Brown's reimbursement filings, then you should find her not guilty on all counts.

11

J.A. 238. According to Brown, this instruction was necessary to the defense's theory that she lacked intent to defraud because VDH was aware of JOBS's problems but did not halt its involvement in SFSP sooner.

A district court's refusal to provide a requested instruction constitutes reversible error if the instruction: "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995) (internal quotation marks omitted). We evaluate jury instructions "as a whole and in the context of the entire charge." *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010) (internal quotation marks omitted).

Brown's requested instruction was an incorrect statement of the law, which by itself is fatal to her claim. While good faith is a defense to fraud, a victim's supposed acquiescence by nonaction is not. A victim's perception of the scheme to defraud is irrelevant to whether the defendant intended to defraud the victim. *See United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) ("The susceptibility of the victim of the fraud . . . is irrelevant to the [criminal fraud] analysis.").

Furthermore, "[i]f a district court gives adequate instruction on specific intent, a separate instruction on good faith is not necessary." *United States v. Mancuso*, 42 F.3d 836, 847 (4th Cir. 1994) (wire fraud); *see also United States v. Fowler*, 932 F.2d 306, 316–317 (4th Cir. 1991) (theft of government property). The district court here instructed the jury on the elements of each offense, including those which required specific intent. Brown

12

does not argue that those instructions were incorrect. The court also instructed the jury multiple times that ignorance or an inaccurate belief was insufficient for fraudulent intent. For example, the court stated:

> [A] person's knowledge of a particular fact may be shown from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact. It is, of course, entirely up to you whether you find any deliberate ignorance or deliberate closing of the eyes and any inferences to be drawn from such evidence. You may not conclude that the defendant had knowledge, however, from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition.

J.A. 1100–1101; *see also* J.A. 1094 (defining "knowingly" to mean that the "defendant was conscious and aware of her action, realized what she was doing or what was happening around her, and did not act because of ignorance, mistake, or accident"); J.A. 1094 (defining "willfully" to mean that the defendant "knowingly performed the act, deliberately and intentionally, on purpose, as contrasted with accidentally, carelessly, or unintentionally"). These instructions adequately captured the concept that a defendant's good faith mistake forecloses a finding of fraudulent intent. *See Mancuso*, 42 F.3d at 847 (holding that court's mens rea instruction was adequate to address good faith). The district court therefore did not abuse its discretion by declining to deliver Brown's flawed instruction.

## D.

Brown also challenges the sufficiency of the evidence on every count of conviction. We agree with the Government that Brown preserved a sufficiency objection only as to conspiracy. Because Brown specifically raised the conspiracy count, and only that count, in her motion for acquittal in the district court, she has waived any appeal of the sufficiency

13

of the evidence on the other counts of conviction. *United States v. Chong Lam*, 677 F.3d 190, 200 (4th Cir. 2012) ("When a defendant raises specific grounds in a Rule 29 motion, grounds that are *not* specifically raised are waived on appeal.").

To prove conspiracy, the Government was required to show "an agreement to commit an offense, willing participation by the defendant, and an overt act in furtherance of the conspiracy." *United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004). On appeal, we review the district court's denial of a Rule 29 motion for judgment of acquittal de novo, "viewing the evidence in the light most favorable to the Government." *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). The relevant question is whether "any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

Here, the Government presented overwhelming evidence that Brown conspired with others to defraud SFSP by submitting false records. To briefly summarize: Employees testified that Brown instructed them to falsify meal count sheets, claiming hundreds more meals than were actually served. Then, Brown and her mother submitted false electronic claims forms with inflated meal count numbers, despite knowing that JOBS could be reimbursed only for meals actually served to children. Given such evidence, a jury could reasonably conclude, beyond a reasonable doubt, that Brown led a conspiracy to falsify federal program records and commit wire fraud.

Brown argues that the Government failed to show that she personally profited from the scheme. But "[p]roof of a conspiracy does not require proof that the object of the conspiracy was achieved or could have been achieved, only that the parties agreed to

14

achieve it." *Tucker*, 376 F.3d at 238. Moreover, the Government presented evidence that Brown converted over $70,000 of SFSP funds to her own use. The district court did not err in denying Brown's motion for acquittal.

E.

Finally, Brown argues that the district court should have dismissed the indictment for selective prosecution or, at a minimum, granted her request for an evidentiary hearing to develop her allegations of selective prosecution on the basis of race and political beliefs. We review de novo a district court's denial of discovery regarding a selective-prosecution claim. *Lighty*, 616 F.3d at 370.

"A selective-prosecution claim asks a court to exercise judicial power over a special province of the Executive Branch and, accordingly, must pass a high threshold in order to succeed." *Lighty*, 616 F.3d at 369. To establish such a claim, a defendant must show both discriminatory effect—"that 'similarly situated individuals of a different race were not prosecuted'"—and discriminatory purpose—"that the decision to prosecute was 'invidious or in bad faith.'" *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996), and *United States v. Greenwood*, 796 F.2d 49, 52 (4th Cir. 1986)). "Similarly, to obtain discovery in support of a selective-prosecution claim, a defendant must produce 'some evidence' making a 'credible showing' of both discriminatory effect and discriminatory intent." *Id.* (quoting *Armstrong*, 517 U.S. at 469–470). The evidentiary threshold for obtaining discovery on such a claim is

15

"rigorous," in order to impose a "'significant barrier to the litigation of insubstantial claims.'" *Id.* (quoting *Armstrong*, 517 U.S. at 464).

Brown's evidence falls far short of this evidentiary threshold. She makes no effort to show that similarly situated SFSP sponsors were not prosecuted. And while she appears to insinuate that the Government's delay in bringing an indictment is evidence of invidious intent, that vague allegation cannot suffice for a credible showing of discriminatory purpose. The district court did not err in denying Brown's request for an evidentiary hearing or her motion to dismiss.

## III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

16